UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FRESH FUNDING SOLUTIONS, INC., <br> *Plaintiff*, | ) <br> ) <br> ) | CASE NO. 3:25-CV-1042 (KAD) |
| v. | ) <br> ) | |
| BAYOU CITY CABINETS LLC, ARTHUR WILLIAM HOFF, JR., <br> *Defendants*. | ) <br> ) <br> ) <br> ) | OCTOBER 17, 2025 |

**MEMORANDUM OF DECISION**
**RE: PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (ECF NO. 30)**

Kari A. Dooley, United States District Judge:

This breach of contract action arises from a failed investment by Plaintiff Fresh Funding Solutions, Inc. ("Fresh Funding") in Defendants Bayou City Cabinets LLC ("BCC") and its sole member, Arthur William Hoff, Jr. ("Hoff"). Fresh Funding alleges that Defendants BCC and Hoff collectively failed to make required payments pursuant to the parties' Future Receipts Sales Agreement, whereby Fresh Funding purchased $290,000.00 of BCC's future receivables for $200,000.00, which were to be remitted in weekly "Initial Periodic Amount" payments at a "Specified Percentage" of BCC's average sales revenue. *See* Complaint, ECF No. 1. Plaintiff asserts a single breach of contract claim seeking in a lump sum the full amount of the remaining purchased receivables, and further seeks treble damages for statutory theft, under Conn. Gen. Stat. § 52-564. *See id.* Pending before the Court is Plaintiff's Motion for Default Judgment as to both Defendants.[1] Default Mot., ECF No. 30. For the following reasons, the Motion for Default Judgment is **DENIED**.

---

[1] Fresh Funding initially filed a Motion for Default Judgment as to BCC only. *See* ECF No. 18. In light of the subsequent entry of default as to Hoff, the instant Motion seeks default judgment as to both Defendants. As such, Fresh Funding's initial Motion for Default Judgment, ECF No. 18, is DENIED as moot.

**Facts and Procedural History**

The following facts are taken from the Complaint, as well as the Exhibits attached thereto, and are deemed admitted for purposes of the instant motion.

Fresh Funding is a Delaware corporation with its sole office and principal place of business in New Haven, Connecticut.[2][3]  Compl., ECF No. 1 at ¶ 1.  BCC is a Texas LLC, whose sole member is Arthur Hoff, Jr., a Texas citizen.  *Id.* at ¶¶ 2–3.  On or about March 10, 2025, the parties entered into the Future Receipts Sales Agreement (the "Agreement").  *Id.* at ¶ 5.  Pursuant to the Agreement, Fresh Funding paid BCC $200,000.00 in exchange for $290,000.00 worth of BCC's future receivables.  *See id.* at Ex. 1, p. 1.  The future receivables were to be remitted through Initial Periodic Amount ("IPA") payments, *i.e.*, the agreed portion of BCC's future sales to be debited to Fresh Funding from BCC's bank account each week.  *Id.*  BCC's IPA payments were based on a "Specified Percentage" of BCC's average sales revenue.  *Id.*  The Specified Percentage under the Agreement was 4.49%, resulting in an IPA of $6,041.67.  *Id.*  BCC's future receivables were fully and completely sold to Fresh Funding, and BCC retained no equity interest or ability to repurchase.  As Guarantor, Hoff guaranteed all of BCC's obligations under the Agreement.  *Id.* at ¶ 7.

Under the Agreement, Fresh Funding assumes the risk that BCC's future receivables may be remitted more slowly than Fresh Funding may have anticipated or projected because BCC's business has slowed down, as well as the risk that the full $290,000.00 may never be remitted because BCC went bankrupt or otherwise ceased operations in the ordinary course of business or

---

[2]  Fresh Funding "helps small and medium sized businesses get the capital they need to sustain or grow," and provides "simple, affordable, uncollateralized capital to our customers, in a fraction of the time it would take traditional banks to do so."  *See* Fresh Funding, *About Us*, LINKEDIN, https://www.linkedin.com/company/fresh-funding (last visited October 15, 2025).

[3]  Notwithstanding this assertion, the Court observes that the Payment History document attached to the Complaint reflects a business address of 42 Broadway, New York, NY 10004.  *See* Compl., Ex. 2.

2

the account debtor had a right of setoff. *Id.*, Ex. 1 at p. 4. Fresh Funding purchased the future receivables knowing the risks that BCC's business may slow down or fail, and assumed these risks based on BCC's representations, warranties, and covenants in the Agreement, which are designed to give Fresh Funding a reasonable and fair opportunity to receive the benefit of its bargain. *Id.* The Agreement also contemplates a reconciliation process whereby, upon request, BCC's weekly payments to Fresh Funding could be adjusted, upward or downward, to more closely reflect BCC's actual future receivables. *Id.* at Ex. 1, pp. 3–4. In the event of a breach of the Agreement by BCC, Fresh Funding is authorized to protect and enforce its rights by, *inter alia*, adjusting the Specified Percentage to 100%, and the "full undelivered Purchased Amount" becomes due and payable immediately. *Id.* at Ex. 1, p. 9.

The Agreement contemplates that Fresh Funding will have direct access to BCC's bank accounts, thus allowing Fresh Funding to transfer to itself the IPA payments. *Id.* at Ex. 1, p. 3. From March 14, 2025 to June 6, 2025, Fresh Funding transferred regular IPA payments to itself with the exception of a single draw which was dishonored by BCC's bank on March 24, 2025. *See id.* at Ex. 2. Thereafter, though an IPA payment was remitted to Fresh Funding on June 20, 2025, draws on BCC's bank account were dishonored on June 9, 2025 and June 23, 2025. *See id.* No further IPA payments have been made. *See id.* at ¶ 14. According to Fresh Funding, BCC breached the Agreement by failing to make the required IPA payment on June 23, 2025, and Hoff breached the Agreement by failing to honor his guaranty. *See id.* at ¶¶ 14–15. The outstanding amount of receivables pursuant to the Agreement is $228,223.00. *Id.* at ¶ 16.

On June 27, 2025, Fresh Funding filed the Complaint. *See* Compl., ECF No. 1. On October 7, 2025, after obtaining entries of default, *see* ECF Nos. 17, 29, Plaintiff filed a Motion for Default Judgment as to Defendants BCC and Hoff, seeking a judgment in the amount of

$228,223.00, plus costs.  ECF No. 30.  Neither BCC nor Hoff has sought to set aside their respective entry of default, or otherwise appeared or defended this action.

**Standard of Review**

Rule 55 of the Federal Rules of Civil Procedure governs motions for default judgment. *See* Fed. R. Civ. P. 55. The two-step process requires first that Plaintiff "obtain an entry of default under Rule 55(a), by showing that the defaulting party 'has failed to plead or otherwise defend.' The second step is to seek a default judgment under Rule 55(b)." *Hernandez v. Apple Auto Wholesalers of Waterbury LLC*, 460 F. Supp. 3d 164, 176 (D. Conn. 2020) (quoting Fed. R. Civ. P. 55(a)).

"It is well established that a party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the sound judicial discretion of the court." *Cablevision of S. Conn. Ltd. Partnership v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001) (internal quotation marks omitted) (citing *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)).  In civil cases, however, "where a party fails to respond, after notice the court is ordinarily justified in entering a judgment against the defaulting party." *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir. 1984).  In making this determination and evaluating the allegations asserted against a defendant, the Court may "deem[] all the well-pleaded allegations in the pleadings to be admitted." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1997).  The Court then assesses whether the allegations, deemed admitted, satisfy the elements necessary to establish liability. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (citing *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)).

**Discussion**

In seeking a default judgment, Fresh Funding relies principally on the terms of the Agreement itself, and argues that the facts alleged in the Complaint demonstrate Defendants' breach. Nevertheless, based upon the plain language of the Agreement, the Court finds that the allegations in the Complaint are insufficient to establish that BCC and/or Hoff breached the Agreement, and therefore Fresh Funding is not entitled to a default judgment.

To prevail on its breach of contract claim, Fresh Funding must establish: "(1) the formation of an agreement; (2) performance by one party; (3) breach of the agreement by the opposing party; (4) direct and proximate cause; and (5) damages." *Henderson v. Wells Fargo Bank, N.A.*, No. 3:13-CV-378 (JBA), 2017 WL 731780, at *6 (D. Conn. Feb. 21, 2017) (citing *McMann Real Equities Series XXII, LLC v. David McDermott Chevrolet, Inc.*, 93 Conn. App. 486, 503–04 (2006)).

Here, Fresh Funding has demonstrated that on March 10, 2025, it formed and entered into the Agreement with BCC and Hoff. *See generally* Compl., Ex. 1. Pursuant to the plain language of the Agreement, in exchange for $200,000.00, BCC assigned a portion of all its future sales to Fresh Funding, up to $290,000.00, to be debited weekly from BCC's bank account.[4] *Id.* The IPA, *i.e.*, the agreed portion of BCC's future sales to be paid to Fresh Funding each week, was based on a Specified Percentage of BCC's average sales revenue. *Id.* The Specified Percentage under the Agreement was 4.49%, resulting in an IPA of $6,041.67. *Id.* Fresh Funding performed under the terms of the Agreement, by paying BCC $200,000.00. *See id.* As to the purported breach, Fresh Funding has demonstrated that while BCC made regular IPA payments

---

[4] Plaintiff—and indeed, the Agreement itself—insists that this arrangement does not constitute a loan. *See* Compl., Ex. 1 at p. 4 ("THIS IS NOT A LOAN"). Nevertheless, insofar as Fresh Funding is providing a sum of money to BCC in exchange for the incremental repayment of that sum, plus $90,000, the Agreement certainly resembles a loan. *See Garland v. Cargill*, 602 U.S. 406, 430 (2024) (Sotomayor, J., dissenting) ("When I see a bird that walks like a duck, swims like a duck, and quacks like a duck, I call that bird a duck.").

in the amount of $6,042.00 between March 2025 and June 2025, Fresh Funding's draw on BCC's checking account on June 23, 2025 was dishonored, and no payments were made by BCC thereafter. *See id.*, Ex. 2. On this basis, Fresh Funding seeks a judgment in the amount of $228,223.00, or the outstanding amount of future receivables due under the terms of the Agreement, along with fees and costs.

However, in doing so, Fresh Funding ignores that pursuant to the Agreement, it expressly assumed the risks that BCC's business may slow down or fail, and that the full $290,000.00 might never be remitted because BCC went bankrupt or otherwise ceased operations in the ordinary course of business. In this regard, there are no allegations whatsoever that BCC was actually able to make the IPA payments but chose not to do so. Likewise, there are no allegations that BCC denied Fresh Funding access to its bank account; that BCC placed its receivables in a different bank account; or that BCC continues to sell product, receive revenue, or otherwise remains operational. Accordingly, absent allegations that BCC had sufficient receivables to make the required IPA payments, the Agreement is not breached by BCC's mere failure to make an IPA payment and/or the dishonoring of a draw on BCC's bank account.[5] Insofar as the Complaint is silent as to whether BCC actually had sufficient receivables to remit the required IPA payments on and after June 23, 2025, or conversely, whether the risk Fresh Funding assumed had come to pass, *i.e.*, BCC had lost business or ceased operations, the Complaint, even accepted as true, does not make out a prime facie case that BCC breached the Agreement. Nor for example, does the Complaint indicate whether Fresh Funding exercised its

---

[5] Fresh Funding cannot have it both ways, first asserting that the Agreement "IS NOT A LOAN" but rather an investment with respect to which Fresh Funding assumes the risk, but then filing a Complaint that reads very much like a collection action on a loan.

contractual right to set the Specified Percentage at 100%.[6]  And even if it did, there is no allegation that 100% of BCC's receivables would make Fresh Funding whole, that is, that 100% of BCC's receivables would amount to $228,223.00.

Under the Agreement, Fresh Funding is *only* entitled to BCC's *future receivables*, and only to the extent of $290,000, whether at the agreed upon percentage or the penalty percentage of 100%.  Fresh Funding essentially converts the penalty percentage of 100% into a debt ("NOT A LOAN") in the amount of the unpaid receivables.  The Agreement does not support this effort absent any allegation that BCC has, in fact, received these funds.

The Court offers no opinion as to whether Fresh Funding can sufficiently allege a breach of the Agreement by BCC, only the opinion that it has not done so.  *See Mickalis Pawn Shop*, 645 F.3d at 137.  Accordingly, Plaintiff is not entitled to a default judgment.[7]

**Conclusion**

For the reasons set forth herein, Plaintiff's Motion for Default Judgment is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 17th day of October 2025.

 /s/ Kari A. Dooley
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

[6] In its Motion for Default Judgment, Fresh Funding claims that BCC blocked access to it bank accounts, in violation of the Agreement. *See* Default Mot. at 4.  Yet, no such assertion is included in the Complaint, or otherwise supported by the Exhibits attached thereto.

[7] Though the Complaint does not actually include a civil theft claim, it does seek treble damages pursuant to Conn. Gen. Stat. § 52-564.  In Connecticut, civil theft makes liable for treble damages "[a]ny person who steals any property of another, or knowingly receives and conceals stolen property." Conn. Gen. Stat. § 52-564.  A civil theft claim under § 52-564 is an action in tort.  *Hamann v. Carl*, 196 Conn. App. 583, 598 (2020).  "Civil theft is synonymous with larceny as defined by Conn. Gen. Stat. § 53a-119." *Vossbrinck v. Eckert Seamans Cherin, & Mellott, LLC*, 301 F. Supp. 3d 381, 391 (D. Conn. 2018) (citation omitted).  Even assuming that Fresh Funding can seek treble damages under Section 52-564 without actually asserting a civil theft claim, to the extent that the Complaint fails to adequately allege a breach of contract, the Court necessarily need not determine whether BCC's conduct plausibly amounts to larceny, such that Fresh Funding is entitled to treble damages. *See* Conn. Gen. Stat. § 53a-119 ("[a] person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains, or withholds such property from an owner.").